UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| RYAN FRYE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 21-1272 |
| | ) | |
| KEVIN LYNN, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER

Plaintiff, proceeding by and through counsel, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging constitutional and state law claims arising from his arrest and the alleged use of excessive force. The matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment. (Doc. 19). The motion is granted.

## PRELIMINARY MATTERS

### Defendants' Motion for Leave to File Excess Pages (Doc. 25)

Defendants' unopposed motion to exceed the page limit set by local rule for the argument section of their reply brief is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine"

issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## FACTS

City of Lincoln police officers arrested Plaintiff on September 27, 2020, for domestic battery and unlawful restraint. UMF 1, 6. The police department employed the defendants in the following capacities: Defendant Adams was the chief of police; Defendant Lynn was a sergeant; and, Defendant Pettit was a corporal. UMF 2-4. Defendant City of Lincoln is a municipal corporation within the State of Illinois. UMF 5.

At the residence where Plaintiff's arrest had occurred, Defendant Lynn had observed a woman with visible injuries to her lip and told other officers to arrest Plaintiff. UMF 8. Defendant Pettit transported Plaintiff to the Lincoln County Jail ("jail"). UMF 13. Upon arrival at the jail, Defendant Pettit pulled his squad vehicle (pickup truck) into the sally port, an enclosed area accessible from the outside via garage doors located on the east and west sides. UMF 18.

The sally port had two video cameras: "Sallyport East" and "Sallyport-West". UMF 19; Def. Ex. E, F. Relative to the position of Defendant Pettit's vehicle at the time, Sallyport East ("East Video") looks down on the driver's side from a location behind and a few steps away from the rear quarter panel; Sallyport-West ("West Video") looks down on the passenger side from a location in front of and a few steps away from the front quarter panel. The exhibits provided to the Court do not have audio.

The videos show Plaintiff getting out of the passenger side of Defendant Pettit's truck with his back against or close to the inside part of the open door. West Video 01:48:15 a.m. He is handcuffed behind his back. *Id.* Defendant Pettit is standing next to Plaintiff, two jail officials are standing on the passenger side, and another officer is standing towards the rear of the truck. *Id.* Defendant Lynn is behind the truck putting on a pair of latex gloves. *Id.* 01:48:15 a.m.-01:48:19 a.m.

Covid-19 protocols in place at the time required jail officials to complete a health questionnaire and take an individual's temperature prior to booking. UMF 15-17. The video shows Plaintiff moving his head away from the thermometer as jail officials pointed it towards his forehead. West Video 01:48:23 a.m. The parties dispute the content of the conversation that occurred during this time: Plaintiff testified that he asked to speak with a supervisor about his fears that Defendant Lynn would harm him; Defendant Pettit testified that Plaintiff made "vague threats of bodily harm to the jailers" and stated to Defendant Lynn, "you better put the gloves on big boy, I've been wanting a piece of you." Pl.'s Dep. 60:19-23; Pettit Dep. 31:16-17; 42:7-9.

After multiple unsuccessful attempts to take Plaintiff's temperature, Defendant Lynn walks quickly from the back of the truck, grabs the thermometer, and walks toward Plaintiff. West Video 01:48:56 a.m.-1:48:11. Plaintiff steps forward with his right foot as Defendant Lynn approaches, then moves his right shoulder down and forward in a quick motion towards Defendant Lynn while looking straight at him. *Id.* Defendant Pettit then pushes Plaintiff back against the vehicle door with his left arm, Defendant Lynn moves the hand with the thermometer towards Plaintiff's head, and Plaintiff moves his head away. *Id.* Plaintiff then bends over at the waist, or gets pushed over, towards the squad vehicle, and moves his feet back and then forward while Defendant Lynn, Defendant Pettit, and a jail official attempt to subdue him. *Id.* Defendant

Lynn then tased Plaintiff and took his temperature. *Id.* Approximately 13 seconds elapsed from the point Defendant Lynn approached Plaintiff and the time officers regained control. Plaintiff was thereafter compliant.

## ANALYSIS

### Count I – Excessive Force Against Defendants Lynn and Pettit

For excessive force claims brought pursuant to 42 U.S.C. § 1983, the Court's inquiry "begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Plaintiff alleged in his Complaint that Defendants Lynn and Pettit violated his right to not be subjected to the use of excessive force under the Fourth Amendment, (Doc. 1 at 4), but he asserts in his summary judgment response that his excessive force claim arises under the Fourteenth Amendment. (Doc. 23 at 15). Plaintiff provides no explanation for this change other than to say it was a "minor pleading defect" that does not defeat his claims. *Id.*, fn. 1.

To the extent that Plaintiff seeks leave to amend his complaint to assert an excessive force claim under the Fourteenth Amendment, the request is denied. A plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (citations omitted). Plaintiff did not seek leave to amend his complaint during this litigation, and, although the Court applies the objective reasonableness standard to excessive force claims arising under both the Fourth and Fourteenth Amendments, the factors the Court must consider under each amendment are slightly different. *Compare Graham*, 490 U.S. at 396, *with Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015); *see also Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 855 (7th Cir. 2017) ("[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad

faith, dilatory motive, repeated failures to cure deficiencies, undue prejudice to defendants, or where the amendment would be futile.").

Excessive force claims arising under the Fourth Amendment require a plaintiff to show that the force used was objectively unreasonable. *Graham*, 490 U.S. at 396. Courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," considering that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

The videos' lack of sound leaves unresolved the question of whether Plaintiff requested to speak with a supervisor as he asserts or whether he threatened officials as Defendant Pettit testified. This dispute is material to the Court's analysis only insofar as relates to the threat of harm a reasonable officer may have perceived. Accepting Plaintiff's version as true, the question becomes whether Defendants' use of force was objectively unreasonable given the other information that would have been available to a reasonable officer in Defendants' positions.

The videos resolve any issues of material fact related to the physical acts of each party. *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) ("When video footage firmly settles a factual issue, there is no genuine dispute about it, and we will not indulge stories clearly contradicted by the footage."). The video shows that Defendants faced a situation where an uncooperative individual arrested for violent crimes made what could be reasonably considered a threatening gesture towards officers and then continued to move back and forth and twist his

body as the situation progressed. Defendant Pettit did not use force until after Plaintiff had made the gesture towards Defendant Lynn; Defendant Lynn did not use the taser until after he and two other officers could not contain Plaintiff. In the 13 seconds that elapsed during this encounter, a reasonable officer in Defendants' positions could not have ascertained the reasons Plaintiff continued to move. Aside from Plaintiff's request for a supervisor and the fears the Court assumes he expressed, the events that had previously transpired would not have suggested that Plaintiff sought only to regain his balance or shield himself from harm.

Plaintiff nonetheless argues that Defendant Lynn had a vendetta against him, and that Defendant Lynn provoked the attack when he rushed towards him with the thermometer. These things may be true, but an official's subjective intentions do not render unreasonable an objectively reasonable use of force, *Graham*, 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force."), nor does any provocation that may have occurred. *Cty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 426-431 (2017) (rejecting the provocation rule in Fourth Amendment excessive force cases).

The record does not permit a reasonable inference that Defendant Lynn's and Pettit's use of force in this situation was objectively unreasonable. The Court finds that no reasonable juror could conclude that Defendants Lynn and Pettit violated Plaintiff's Fourth Amendment rights.

**Count II – Failure to Train Against Defendant Adams**

Plaintiff alleged in Count II that Defendant Adams, in his capacity as Chief of Police, failed to adequately train Defendants Lynn and Pettit in the use of force.

Plaintiff cannot prevail against Defendant Adams just because he may have been in charge, *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), nor has he presented evidence showing that

Defendant Adams was personally responsible for the alleged lack of training. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). Because the Court found that there is no underlying constitutional violation, any claims Plaintiff brings pursuant to *Monell v. Dep't of Social Srvcs. of City of New York*, 436 U.S. 658 (1978), also fail. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The Court finds that no reasonable juror could conclude that Defendant Adams violated Plaintiff's constitutional rights.

### Counts III and IV

Plaintiff alleges state law claims for battery against Defendants Lynn, Pettit, and City of Lincoln, and an indemnification claim against Defendant City of Lincoln. Defendants ask the Court to grant summary judgment in their favor on the merits, or, in the alternative, relinquish jurisdiction to the state court. Because no federal claims remain pending, supplemental jurisdiction is no longer appropriate under 28 U.S.C. § 1367. The Court dismisses these claims without prejudice below. *Citadel Sec., LLC v. Chicago Bd. Options Exchange, Inc.*, 808 F.3d 694, 701 (7th Cir. 2015) ("A dismissal for lack of subject matter jurisdiction is not a decision on the merits, and thus cannot be a dismissal with prejudice.").

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motion for Leave to File [25] is GRANTED.**

2) **Defendants' Motion for Summary Judgment [19] is GRANTED as to Counts I and II and as to Defendants' request to dismiss Counts III and IV for lack of jurisdiction and DENIED as to any other relief requested. Counts I and II are dismissed with prejudice. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed herein are denied as moot, and this case is terminated.**

3) **Counts III and IV are dismissed without prejudice for lack of jurisdiction.**

**4) All pending hearings and deadlines are vacated.**

Entered this 1st day of August, 2023.

*s/Sara Darrow*
SARA DARROW
CHIEF U.S. DISTRICT JUDGE